**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LESVI MARISOL DIAZ MEMBRENO,**<br><br>          **Petitioner,**<br><br>     **v.**<br><br>**PAMELA BONDI, *et al.*,**<br><br>          **Respondents.** | **Case No. 26–cv–02395–ESK**<br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** comes before the Court on petitioner Lesvi Marisol Diaz Membreno's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Petition). (ECF No. 1.) Respondents oppose the Petition. (ECF No. 6.) For the following reasons, I will dismiss the Petition for lack of jurisdiction.

## I.    BACKGROUND

Petitioner is a citizen of Honduras. (ECF No. 1 ¶ 1.) She entered the United States on June 17, 2005. (*Id.*) On August 31, 2005, petitioner was ordered removed *in absentia* as she did not attend her removal proceedings. (ECF No. 6–3.)

On May 9, 2025, the United States Citizenship and Immigration Services (USCIS) issued petitioner a bona fide determination notice in response to petitioner's application for an U visa.[1] (ECF No. 8–1.) Petitioner filed a

---

[1] A U visa "is a temporary legal status offered to victims of rape and other specified crimes who have cooperated, or are likely to cooperate, in the investigation and prosecution of those crimes." *Contreras Aybar v. Sec'y United States Dep't of Homeland Sec.*, 916 F.3d 270, 272 (3d Cir. 2019) (citing 8 U.S.C. § 1101(a)(15)(U)(i)). "The statute also gives a pathway to permanent resident status: after three years of holding a U Visa, an alien may apply for permanent resident status … ." *Id.*

motion to reopen her immigration proceedings on December 9, 2025.   (ECF No. 1–2 p. 4.)   On December 11, 2025, she was detained by Immigration and Customs Enforcement (ICE) after she reported to a I-130 Petition for Alien Relative Interview in Newark, New Jersey.   (ECF No. 1 ¶ 1.)

An immigration judge denied the motion to reopen on January 15, 2026. (ECF No. 1–2 p. 6.)   Petitioner filed an appeal with the Board of Immigration Appeals on February 9, 2026.   (*Id.* p. 12.)   She filed a request for a stay of removal on March 5, 2026.   (*Id.* p. 15.)

Respondents filed an answer on March 9, 2026 arguing that petitioner is properly detained pursuant to 8 U.S.C. § 1231(a)(1) because she has a final order of removal and is within the 90-day mandatory detention period.   (ECF No. 6 pp. 1, 2.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Petitioner was detained within the District of New Jersey when she filed the Petition, and she asserts that her continued detention violates due process. Therefore, the Petition is appropriately filed in this District.   *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).

## III.    DISCUSSION

Petitioner argues that her detention is illegal because her U visa application prevents her from being removed from the country.   (ECF No. 1 ¶ 25.)   According to petitioner, "individuals [with deferred action status] have

a heightened liberty interest in that they reasonably expected to remain at liberty unless some material circumstance changed after they were granted that benefit.   The government has no legitimate interest in their detention, as they cannot be removed."   (ECF No 8 p. 1.)

Section 1231 states in relevant part that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).   This 90-day detention is mandatory.   *See Zadvydas v. Davis,* 533 U.S. 678, 683 (2001) ("While removal proceedings are in progress, most aliens may be released on bond or paroled.   After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody." (internal citation omitted)).

"The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order. (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."   8 U.S.C. § 1231(a)(1)(B).   As there is no evidence that the removal order was ever stayed or that petitioner was confined for a reason other than immigration proceedings, the removal period began on the date petitioner's removal order became final.   Therefore, the removal period—during which petitioner's detention was mandatory—expired on November 29, 2005.[2]

There is a distinction between mandatory detention during the 90-day removal period pursuant to § 1231(a)(1)(A) and permissible detention pursuant

---

[2] The 90-day removal period would also be over if it began to run when petitioner was detained on December 11, 2025 because 90 days from December 11, 2025 is March 11, 2026.

3

to § 1231(a)(6), which "authorizes detention for a timeframe 'reasonably necessary to bring about that alien's removal from the United States.'" *Diaz-Ortega v. Lund*, No. 1:19–cv–00670–P, 2019 WL 6003485, at \*11 (W.D. La. Oct. 15, 2019) (quoting *Zadvydas*, 533 U.S. at 689), *report and recommendation adopted*, No. 1:19–cv–00670–P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019). The presumptively permissible timeframe for post-removal-period detention is six months.   *Zadvydas*, 533 U.S. at 701.

Petitioner indicates that she received a letter from ICE stating that it was "'in possession of travel documents to affect [petitioner's] removal and expects this to occur March 2026 … .'"   (ECF No. 1 ¶ 4.)[3]   It would therefore seem that her removal is imminent.   Unfortunately, I lack jurisdiction to consider whether her detention is impermissible.   "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States … shall be available only in judicial review of a final order under this section."   8 U.S.C. § 1252(b)(9). Courts "must ask: If not now, when?   If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar."   *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020).   "So when [noncitizens] can get review later—by litigating before an immigration judge, the Board of Immigration Appeals, and then by way of a [petition for review] to a court of appeals—they must do so."   *Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026).

"A now-or-never claim must raise legal or factual *questions* that a court of appeals will not later be able to review meaningfully on a [petition for review]. It is not enough to assert an injury that cannot be remedied later."   *Id.* at 274–

---

[3] This letter was not provided.

4

75 (emphasis in original).    Petitioner's claim of wrongful detention depends on whether she may be removed from the United States, which is a question that can be answered in a petition for review.

> [O]ur legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments.    Consider an innocent defendant who was convicted of a serious crime and imprisoned because his trial lawyer was ineffective.    His detention is wrongful: He did not actually commit the crime.    But that does not entitle him to seek immediate release through habeas; first, he must exhaust his direct appeal.

*Id.* at 275.    On the facts before me, petitioner's wrongful detention claims are "not 'wholly collateral' to the removal process; they are 'inextricably linked' to it."    *Id.* at 274.[4]    Therefore, I lack jurisdiction over the Petition pursuant to § 1252(b)(9).

At my request, the parties addressed whether the jurisdiction-stripping provision of § 1252(b)(9) violated the Suspension Clause of the Constitution as applied to petitioner.    (ECF Nos. 15, 16.)    "The Suspension Clause forbids suspension of the writ of habeas corpus 'unless when in Cases of Rebellion or Invasion the public Safety may require it.'"    *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 166 (3d Cir. 2018) (quoting U.S. Const. art. I, § 9, cl. 2).    To determine whether a jurisdiction-stripping statute violates the Suspension Clause, courts "first determine 'whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention.'"    *Id.* (quoting *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 445 (3d Cir. 2016)).    "Then, if the petitioner is not prohibited from invoking the

---

[4] I acknowledge that some district courts have concluded that § 1252(b)(9) does not bar review of whether a U visa holder may be detained.    *See, e.g., Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901 (W.D. Wash. 2025).    However, I am required to follow the Third Circuit's interpretation of § 1252(b)(9) as set forth in *Khalil.*

Suspension Clause, we 'turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal).'"  *Id.* (quoting *Castro*, 835 F.3d at 445).

I conclude that the Suspension Clause does not overcome the lack of jurisdiction in these specific circumstances.  Assuming without deciding that petitioner's U visa application is a "substantial connection" to the United States, *see id.* at 167–68, the petition for review process will provide "an adequate and effective alternative to habeas review."  *Id.* at 177 (cleaned up). Petitioner's administrative remedies are ongoing, (ECF No. 1–2 p. 12), and she will have the opportunity to present her claims to the Third Circuit in a petition for review if necessary.  Accordingly, the jurisdiction-stripping provision of §1252(b)(9) does not violate the Suspension Clause as applied to petitioner.

## IV.  CONCLUSION

For the reasons stated above, the Petition is dismissed lack of jurisdiction. An appropriate Order accompanies this Opinion.

_/s/ Edward S. Kiel_

**EDWARD S. KIEL**
UNITED STATES DISTRICT JUDGE

Dated: March 26, 2026

6